

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CP:TK
F.#2010R01516

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 13, 2011

By ECF

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Kesner Rosemond
>      Criminal Docket No. 10 Cr. 626 (s-1) (CBA)

Dear Chief Judge Amon:

The defendant in the above-referenced case is scheduled to be sentenced on June 1, 2011.  On November 18, 2010, the defendant pleaded guilty to Count One of an indictment charging him with conspiring to distribute five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II).  The Presentence Investigation Report ("PSR") indicates that the defendant's Guidelines range results in a total adjusted offense level of 37 and a criminal history category of II, with a corresponding range of imprisonment of 235 to 293 months.  PSR ¶ 128.  The government respectfully disagrees with the PSR's assessment that the defendant is deserving of a leadership enhancement.  Accordingly, the defendant's Guidelines range should result in a total adjusted offense level of 33 and a criminal history category of II, with a corresponding range of imprisonment of 151 to 188 months.  For the reasons stated below, the defendant should be sentenced within the Guidelines range suggested by the government.

I.   Factual Background

A long-term investigation by the Drug Enforcement Administration ("DEA") revealed that the defendant was a member of a multi-city narcotics-trafficking network in which he purchased kilogram-quantities of cocaine from the West Coast and coordinated the shipment of the cocaine to the East Coast, where it was distributed.  PSR ¶ 4.  It was the defendant's practice to order

cocaine from a supplier in Los Angeles (the "Supplier") and ship the drugs via overnight delivery service to an individual whom he paid to receive the drugs. PSR ¶ 5. This individual was referred to as a "catcher" since his/her sole task was to "catch" or receive the incoming drug packages. The defendant often arranged for the parcels to be shipped under the names of individuals whose identities had been stolen. PSR ¶ 18. The defendant opened federal express accounts in the names of these individuals and also provided the "catcher" with false identification in their names so that the "catcher" would be authorized to take possession of the parcels when they arrived.

In 2010, the government obtained consensually-monitored recordings of the defendant which revealed him to be coordinating cocaine shipments. PSR ¶ 7. In the summer of 2010, the government executed a search warrant on a Los Angeles storage locker that the defendant had rented. PSR ¶ 9. This locker contained nothing but a single suitcase that, when opened, contained mustard, vacuum sealing and other packing materials that members of the network commonly used to package narcotics and narcotics proceeds. Id. Subsequently, in July 2010, the government intercepted a package containing one kilogram of cocaine that the Supplier attempted to mail to the defendant. PSR ¶ 10.

In August 2010, agents executed a search warrant on the defendant's home in Georgia. This search revealed a loaded firearm, cash, a treatise on how to manufacture synthetic cocaine and loan applications from an auto-dealership in New York from which the defendant had obtained the identities of the individuals in whose name he shipped the drug packages.[1] PSR ¶ 18.

II. A Non-Guidelines Sentence is Unwarranted

    A. The Offense is of a Serious Nature

A sentence within the suggested Guidelines range is warranted because the defendant's crimes were of a serious nature. The defendant took part in a sophisticated scheme that resulted in the distribution of at least 15 kilograms of cocaine. Courts have repeatedly held that narcotics-trafficking offenses of this nature

---

[1] Despite the fact that the defendant employed a "catcher" to receive packages on his behalf, the government did not include a leadership enhancement in the Guidelines calculation outlined in the defendant's plea agreement and therefore finds it appropriate to request a sentence within the Guidlines range outlined in that document.

should be treated seriously by sentencing courts. See e.g., United States v. Garcia, 1989 WL 131205 *4 (E.D.N.Y. Oct. 24, 1989) (Raggi, J.) ("[i]t is well-recognized that narcotics-trafficking is a serious offense.") (internal citations omitted). Adding to the seriousness of the offense is the fact that the defendant involved unwitting, innocent individuals in his narcotics-trafficking by stealing their identities for shipping drug packages. This not only resulted in their being victims of identity theft, but also had the horrifying potential of exposing them to interrogation or arrest if a package shipped under an account bearing their personal information had been intercepted by law enforcement.

Perhaps most troubling is the defendant's possession of a loaded firearm, which is an unquestionably serious offense and especially so in light of his status as a convicted felon. See United States v. Mcbean, 2009 WL 2707409 *2 (E.D.N.Y. Aug. 24, 2009) (Weinstein, J.) ("illegal possession of a firearm is a serious offense and will result in substantial punishment."). While one may wish to view the defendant's actions as non-violent, the presence of a loaded firearm qualitatively changes the nature of his offense and forces us to view his actions through a darker lens.

The serious nature of the defendant's offense militates against the issuance of a non-Guidelines sentence.

B. The Defendant Has a High Potential for Recidivism and Has Yet to Demonstrate A Sincere Desire to Reform

Over the past 20 years, the defendant has solidified his status as a habitual narcotics-trafficker and user of firearms. Despite receiving several lengthy sentences, he has continued to demonstrate that he is incapable of living a law-abiding life.

To begin with, the defendant previously served six years' imprisonment for possessing a firearm. PSR ¶ 55. Subsequently, the defendant served another six years' imprisonment for trafficking cocaine in New Jersey and was paroled for that offense in 2002. PSR ¶ 72. In 2006, agents of the Internal Revenue Service seized the defendant's assets in the District of New Jersey after they discovered suspicious deposits going into his bank account that suggested the defendant was attempting to deposit the proceeds of illegal activity. See Addendum to PSR. Interestingly, the defendant did not contest this seizure even though it resulted in the confiscation of approximately $72,000.

Shockingly, after all this, the defendant continued to engage in the very same offenses for which he had been previously

4

punished. This record overwhelmingly suggests that a sentence designed to specifically deter the defendant from committing future criminal acts is required. A sentence outside the Guidelines range is not likely to achieve that result. See United States v. Ewing, 129 F.3d 430 (7th Cir. 1997) ("A defendant who has been convicted for same offense more than once has demonstrated a need for greater sanctions to deter him or her from committing same crime.").

III. Conclusion

Given the serious nature of defendant's acts and his demonstrated resistance to reform in the face of multiple convictions and extensive periods of incarceration, a term of imprisonment within the suggested Guidelines range is appropriate.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  _____/s_____
Todd Kaminsky
Assistant U.S. Attorney
(718) 254-6367

cc: John Mitchell, Esq.
    John Lanigan, U.S. Probation